**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN P. LAMB, <u>et</u> <u>al.</u>,      ) | |
|          ) | |
|       **Plaintiffs,**    ) | |
|          ) | |
|   **v.**          ) | **Civil Action No. 05-946 (GK)** |
|          ) | |
| WASHINGTON HOSPITAL CENTER   ) | |
| CORPORATION, <u>et</u> <u>al.</u>,     ) | |
|          ) | |
|       **Defendants.**    ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs, John and Lisa Lamb, personal representatives of the Estate of Jack Lamb, bring this negligence and breach of contract action against Defendants Washington Hospital Center Corporation, Medstar Health, Inc. d/b/a Washington Hospital Center, and David Brett-Major.[1]  This matter is before the Court on the United States' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[2]  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, the Court **grants** the United States' Motion to Dismiss and **remands** the rest of Plaintiffs' case, which consists only of common law claims against Defendants Washington Hospital Center

---

[1] Plaintiffs are suing Brett-Major in his individual capacity. <u>See</u> Pl.s' Opp'n at ¶ 1.

[2] The United States was substituted as defendant for purposes of removal pursuant to 28 U.S.C. § 2679(d)(1).  <u>See</u> 28 U.S.C. § 2679(d)(1) ("Upon certification ... any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant.").

Corporation and Medstar Health, Inc. d/b/a Washington Hospital Center, to the Superior Court for the District of Columbia for further proceedings.

## I.   BACKGROUND[3]

On January 15, 2004, decedent Jack Lamb underwent surgery at the Washington Hospital Center. See Compl. ¶ 5. At all times relevant herein, Defendant Brett-Major was a United States Navy doctor who was working at the Washington Hospital Center on training assignment pursuant to a Memorandum of Understanding ("MOU") between the National Naval Medical Center and the Washington Hospital Center. See Def.s' Attach. 1. According to Plaintiffs, he was also an "agent, servant and/or employee[] of Defendants, Washington Hospital Center Corporation and Medstar Health, Inc. d/b/a Washington Hospital Center at all times during decedent's care." Compl. ¶ 7.

Plaintiffs claim that "Defendants negligently and carelessly failed to provide a safe, antiseptic, clean and sanitary environment for the decedent, failed to timely act upon decedent's condition of infection and pneumonia and were in other respects careless, reckless and negligent and did deviate from the accepted

---

[3] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true and liberally construed in favor of the plaintiff. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 625 (D.C. Cir. 1997). Therefore, the facts set forth herein are taken from Plaintiffs' Complaint or from the undisputed facts presented in the parties' briefs.

standards of medical care." <u>Id.</u> ¶ 14.  They claim that, "[a]s a direct and proximate result of the negligence and carelessness of Defendants and deviations from the accepted standards of care, ... Jack J. Lamb was caused to sustain serious personal injuries and he was otherwise injured.  He also sustained severe shock to his nervous system and was otherwise internally and externally injured which resulted in the death of Jack J. Lamb on or about March 6, 2004." <u>Id.</u> ¶ 15.  They maintain that, "prior to his demise, Jack J. Lamb suffered great bodily pain and mental anguish.  That he was obliged to prolong his hospitalization and receive extensive medical care and treatment, all attended with pain and suffering." <u>Id.</u> ¶ 16.

Plaintiffs also maintain that Jack Lamb "contracted with the Defendants, Washington Hospital Center Corporation and Medstar Health, Inc. d/b/a Washington Hospital Center, to provide a safe, secure and disease free environment in order to provide for his care while a patient at Defendants' facility." <u>Id.</u> ¶ 26. According to Plaintiffs, "the Defendants have breached this contract with the deceased in failing to provide the sterile, clean and antiseptic environment and [in] fail[ing] to provide the appropriate care for which the decedent contracted." <u>Id.</u> ¶ 28. They claim that, "as a result of this breach of contract, the decedent did develop the infection and died as a direct and

approximate result of same with no breach by the decedent contributing thereto." Id. ¶ 29.

On March 4, 2005, Plaintiffs filed this negligence and breach of contract action against Defendants Washington Hospital Center Corporation, Medstar Health, Inc. d/b/a Washington Hospital Center, and David Brett-Major in the District of Columbia Superior Court seeking money damages. See id. at 8. On May 11, 2005, the government certified that Defendant Brett-Major was acting within the scope of his employment during the alleged incidents. See Defs.' Ex. C. Defendants then substituted the United States for Defendant Brett-Major pursuant to 28 U.S.C. § 2679(d)(1) and removed the instant action to this Court pursuant to 28 U.S.C. § 2679(d)(2).[4]

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires the plaintiff to bear the burden of establishing by a preponderance of the evidence that the court has jurisdiction to entertain his claims. See Fed. R. Civ. P. 12(b)(1); Judicial Watch, Inc. v. FBI, 190 F.Supp.2d 29, 32 (D.D.C. 2002); Pitney Bowes, Inc. v. United States Postal Serv., 27 F.Supp.2d 15, 19 (D.D.C. 1998). In determining its jurisdiction, the court must accept the allegations

---

[4] "Upon certification ... any civil action or proceeding commenced upon such claim in a State court shall be removed ... to the district court of the United States for the district and ... shall be deemed to be an action or proceeding brought against the United States...." 28 U.S.C. § 2679(d)(2).

in the complaint as true and draw all reasonable inferences in favor of the plaintiff.   Such allegations, however, "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp.2d 9, 13-14 (D.D.C. 2001) (internal quotation omitted).   The court is permitted to consider information outside the pleadings.   See St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3; Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992); Lipsman v. Sec'y of Army, 257 F.Supp.2d 3, 6 (D.D.C. 2003).

## III. ANALYSIS

### A.   The United States Was Properly Substituted for Defendant Brett-Major Under the Westfall Act

The United States argues that Defendant Brett-Major engaged in the conduct attributed to him in the scope of his employment as a federal employee and, as a consequence, that the United States should be substituted for him under the Federal Employees Liability Reform and Tort Compensation Act ("Westfall Act"), 28 U.S.C. § 2679(d)(1).

The Westfall Act, 28 U.S.C. § 2679(b)(1), provides that a federal employee acting within the scope of employment is immune from state tort suits for money damages.[5]   See Stokes v. Cross, 327

---

[5] Congress enacted the Westfall Act in response to the Supreme Court's decision in Westfall v. Erwin, 484 U.S. 292, 300 (1988), in which the Court held that federal officials generally enjoy (continued...)

F.3d 1210, 1213 (D.C. Cir. 2003); <u>Haddon</u>, 68 F.3d at 1423.   Thus,
when a federal employee is sued for a wrongful or negligent act,
the United States Attorney General, or by designation the United
States Attorney in the district where the claim is brought, may
certify that the employee was acting at the time within the scope
of his or her employment.   28 U.S.C. § 2679(d)(1); 28 C.F.R. §
15.3(a).   "Upon certification ... any civil action or proceeding
commenced upon such claim in a State court shall be removed ... to
the district court of the United States for the district and ...
shall be deemed to be an action or proceeding brought against the
United States...."   28 U.S.C. § 2679(d)(2).   Under the Westfall
Act, the "certification of the Attorney General [or designee] shall
conclusively establish scope of office or employment for purposes
of removal."   <u>Id.</u>

        For purposes of substitution, however, the certification is
judicially reviewable.   <u>See</u> <u>Stokes</u>, 327 F.3d at 1213 (citing
<u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 420 (1995)).   Our
Court of Appeals emphasized that "the certification 'is not

---

        [5](...continued)
absolute immunity from state tort lawsuits for money damages only
if their conduct was both within the scope of employment and
discretionary in nature.   The Westfall Act "eliminates the
'discretionary' requirement and provides that federal employees'
immunity from state tort lawsuits for money damages hinges
exclusively on whether they were acting within the scope of
employment during the alleged incident." <u>Haddon v. United States</u>,
68 F.3d 1420, 1422-23 (D.C. Cir. 1995) (internal citations
omitted).

conclusive regarding substitution of the federal government. Instead, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant.'" <u>Stokes</u>, 327 F.3d at 1214 (quoting <u>Haddon</u>, 68 F.3d at 1423) (internal citation omitted)). <u>See</u> <u>Kimbro v. Velten</u>, 30 F.3d 1501, 1509 (D.C. Cir. 1984) (the district court should "not really treat the certification as having any particular evidentiary weight").

Accordingly, a plaintiff challenging a scope of employment certification must bear the burden of "rais[ing] a material dispute regarding the substance of [the government's] determination by alleging facts that, if true, would establish that the defendants were acting outside the scope of their employment." <u>Stokes</u>, 327 F.3d at 1215 (citing <u>Kimbro</u>, 30 F.3d at 1508-09). <u>See</u> <u>Council on Am. Islamic Relations, Inc. v. Ballenger</u>, 366 F.Supp.2d 28, 31 (D.D.C. 2005) ("those challenging the certification bear the burden of rebutting the government's findings") (internal citation omitted). If necessary, the court may permit the plaintiff to conduct reasonably circumscribed discovery and hold an evidentiary hearing to take evidence. <u>See</u> <u>Stokes</u>, 327 F.3d at 1214.

However, "[t]he district court does not err in dismissing a claim against an employee prior to discovery where the plaintiff 'did not allege any facts in his complaint or in any subsequent

filing ... that, if true, would demonstrate that [the defendant] had been acting outside the scope of his employment.'" Daisley v. Riggs Bank, -- F.Supp.2d --, No. 03-1820, 2005 WL 1278470, at *10 (D.D.C. May 31, 2005) (quoting Stokes, 327 F.3d at 1216) (internal quotation omitted).  As the Court of Appeals observed in Stokes, "[n]ot every complaint will warrant further inquiry into the scope-of-employment issue." Stokes, 327 F.3d at 1216.  See Caesar v. United States, 258 F.Supp.2d 1, 3-4 (D.D.C. 2003) ("If the Court may independently determine, taking all of the allegations of the Complaint as true, and making all reasonable factual inferences in the plaintiff's favor, that, as a matter of law, the alleged tortfeasor was acting within the scope of her employment when plaintiff was injured, then no evidentiary hearing is required.").

For military employees, Congress has defined acting within the scope of employment to mean "acting in [the] line of duty."  28 U.S.C. § 2671 (2005).  "Line of duty," in turn, takes its meaning from the applicable state law of respondeat superior.  See Nelson v. United States, 838 F.2d 1280, 1282 (D.C. Cir. 1988) (internal citation omitted).

Under District of Columbia law, which governs the question of scope of employment in this jurisdiction, the Court looks to the Restatement (Second) of Agency (1958).  See Stokes, 327 F.3d at 1215; Haddon, 68 F.3d at 1423.  Under the Restatement,

> [c]onduct of a servant is within the scope of employment
> if, but only if: (a) it is of the kind he is employed to

perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1). Plaintiffs' Complaint contains no allegation that Defendants used any force. Therefore, only the first, second, and third criteria are at issue in this case.

In the instant case, it is clear that Plaintiffs' Complaint and their subsequent filings do not contain sufficient factual allegations to warrant discovery or an evidentiary hearing on the scope of employment question.

With respect to the first criterion of the Restatement, Defendant Brett-Major's actions "must have either been 'of the same general nature as that authorized' or 'incidental to the conduct authorized.'" Haddon, 68 F.3d at 1424 (quoting Restatement (Second) § 229) (emphasis added in Haddon). According to the D.C. Court of Appeals, for conduct to be "incidental," it must be "foreseeable," meaning that it is a "direct outgrowth of the employee's instructions or job assignment." Haddon, 68 F.3d at 1424 (internal citations and quotation omitted). See Johnson v. Weinberg, 434 A.2d 404, 408 (D.C. 1981) ("The critical question to be resolved is whether the conduct in question was foreseeable as being within the range of responsibilities entrusted to the employee."). "The District's law liberally construes this first

-9-

prong of the Restatement's <u>respondeat</u> <u>superior</u> analysis." <u>Council on Am. Islamic Relations, Inc.</u>, 366 F.Supp.2d at 31 (citing <u>Stokes</u>, 327 F.3d at 1216).

In this case, it is clear that caring for Washington Hospital Center patients is a critical part of the expected and authorized conduct of being a United States Navy doctor working at the Washington Hospital Center on training assignment. It is also clear that the conduct alleged was "foreseeable as being within the range of responsibilities" entrusted to Defendant Brett-Major. Accordingly, the first part of the scope of employment test is satisfied.

With respect to the second criterion of the Restatement, Defendant Brett-Major's actions must have been committed while he was working. <u>See</u> <u>Daisley</u>, -- F.Supp.2d at *11 (citing <u>Konarski v. Brown</u>, 293 F.Supp.2d 70, 73 (D.D.C. 2003) and <u>Caesar</u>, 258 F.Supp.2d at 5). In this case, there appears to be no question that the conduct alleged occurred while Defendant Brett-Major was on active duty at the Washington Hospital Center. Accordingly, the second part of the scope of employment test is satisfied.

With respect to the third criterion of the Restatement, Defendant Brett-Major's conduct must be "actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228(1)(c). "'Conduct of a servant is not within the scope of employment if it is ... too little actuated by a purpose to

-10-

serve the master.'" <u>Stokes</u>, 327 F.3d at 1216 (quoting Restatement (Second) of Agency § 228(2)).   The District of Columbia's formulation of this test "'excludes from the scope of employment all actions committed solely for [the servant's] own purposes.'" <u>Stokes</u>, 327 F.3d at 1216 (quoting <u>Weinberg v. Johnson</u>, 518 A.2d 985, 990 (D.C. 1986) (internal quotation omitted)).   Plaintiffs have offered nothing to indicate that Defendant Brett-Major's actions were committed solely for his own purposes.   Accordingly, the third part of the scope of employment test is satisfied.

The Court, therefore, finds that Plaintiffs have failed to rebut the United States' certification.[6]   Accordingly, the Court concludes that the United States was properly substituted for Defendant Brett-Major under the Westfall Act.[7]

---

[6] The Court also notes that Plaintiffs have not requested an evidentiary hearing or preliminary discovery with respect to their allegations regarding Defendant Brett-Major.   <u>Compare</u> <u>Stokes</u>, 327 F.3d at 1216 (plaintiff sought "depositions of the defendants and other witnesses as well as statements they had made and memoranda they had written" to "indicate that they had maliciously acted contrary to their employer's interest and, therefore, outside the scope of their employment").

[7] Plaintiffs argue that Defendant Brett-Major was not acting within the scope of his employment because he was a "borrowed servant and agent for [Washington Hospital Center] at the time of the alleged negligence."   Pl.s' Opp'n at 4.   The MOU, however, specifically provides that

> Trainees affected by this agreement ... remain employees of the United States and perform duties within the course and scope of their Federal employment. Consequently, the provisions of the Federal Tort Claims Act (Title 28, U.S.C. Sections 1346(b), 2671-2680), including its
> (continued...)

-11-

B.    **The United States Is Immune from Suit Under the Federal Tort Claims Act**

The United States argues that if it is substituted for Defendant Brett-Major under the Westfall Act, it is immune from suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq.. The doctrine of sovereign immunity bars all suits against the United States except in the event of an explicit statutory waiver of such immunity. See Cox v. Sec'y of Labor, 739 F.Supp. 28, 29 (D.D.C. 1990). While the FTCA is one common source for a waiver of sovereign immunity, Section 2680(h) of that Act specifically excludes "[a]ny claim arising out of assault, battery, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" from that waiver. 28 U.S.C. § 2680(h). Because the sole bases of Plaintiffs' suit is negligence and breach of contract, the Court concludes that the United States is immune from suit pursuant to Section 2680(h).[8] See 28 U.S.C. § 2680(h).

---

[7](...continued)
defenses and immunities, will apply to allegations of negligence or wrongful acts or omissions of the trainees while acting within the scope of their duties pursuant to this agreement.

MOU, ¶ 4(h).

[8] In light of the Court's holding, supra, that the United States is immune from suit under the FTCA, it is unnecessary to address the United States' argument that Plaintiffs' Complaint should be dismissed for failure to exhaust administrative remedies.

**IV.   CONCLUSION**

_____Accordingly, for the foregoing reasons, the Court **grants** the United States' Motion to Dismiss and **remands** the rest of Plaintiffs' case, which consists only of common law claims against Defendants Washington Hospital Center Corporation and Medstar Health, Inc. d/b/a Washington Hospital Center, to the Superior Court for the District of Columbia for further proceedings.[9]

An Order will issue with this Memorandum Opinion.


July 27, 2005
/s/_____
Gladys Kessler
United States District Judge


---

[9] The Court declines to exercise its supplemental, and discretionary, jurisdiction, pursuant to 28 U.S.C. § 1367, over those claims.